**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

FANATICS, LLC,

      Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____ /

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Fanatics, LLC ("Plaintiff" or "Fanatics"), hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, offering for sale, selling, and/or distributing goods using counterfeits and confusingly similar imitations of Fanatics' trademarks within this district through various fully interactive commercial Internet websites operating under the domain names set forth on Schedule "A" hereto (the "Subject Domain Names"). In support of its claims, Fanatics alleges as follows:

## NATURE OF THE CASE

1.     Fanatics is filing an action for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement against Defendants, who are each advertising, distributing, offering for sale, and/or selling goods using counterfeit and infringing trademarks that are exact copies of the Fanatics trademarks without authorization via fully interactive commercial Internet websites operating under the Subject Domain Names.

2.      Fanatics is a global leader in licensed sportswear and sports merchandise. For over fifteen years, Fanatics has operated the official e-commerce sites for certain sports leagues in the United States, including the NFL, MLB, NBA, and NHL, along with many professional and collegiate teams. Fanatics has invested deeply in technology and marketing to better serve sports fans and its business partners and has significantly increased e-commerce sales for all of its business relationships. Thanks to Fanatics' track record of success with its partners, its rights have consistently expanded, including the right to produce a broad range of apparel, such as jerseys and championship products. Fanatics sells sports team and league licensed consumer products using its federally registered trademarks at various retail stores and special events, and via its mobile apps and the Internet including, but not limited to, at www.fanatics.com.

3.      Like many other famous trademark owners, Fanatics suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who operate various fully interactive commercial Internet websites. Specifically, Defendants are all using counterfeits and infringements of Fanatics' famous name and the Fanatics trademarks to make their websites appear more relevant and attractive to consumers shopping for genuine Fanatics products online.  In doing so, Defendants wrongfully reproduce and counterfeit Fanatics' federally registered trademarks at issue herein for the twin purposes of duping and confusing the consuming public and earning substantial profits across their e-commerce websites. Defendants are each engaged in their present counterfeiting and infringing activities with the knowledge and intent that Defendants' goods and/or services will be mistaken for the genuine high-quality goods and services offered for sale by Fanatics.

4.      By their actions, Defendants are causing individual, concurrent, and indivisible harm to Fanatics and the consuming public by depriving Fanatics of its right to determine the way

its trademarks are presented to the public through merchandising; defrauding the public into thinking Defendants' goods and/or services are valuable, authorized goods and services of Fanatics; deceiving the public as to Fanatics' sponsorship of and/or association with Defendants' goods and/or services and the websites; and wrongfully trading and capitalizing on Fanatics' reputation and goodwill and the commercial value of its trademarks. As a result, Fanatics requires the Court's intervention if any meaningful stop is to be put to Defendants' unlawful counterfeiting and infringing activities.

## JURISDICTION AND VENUE

5.      This is an action for injunctive relief and damages for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), and 1125(d), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Fanatics' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

6.      Defendants are subject to personal jurisdiction in this district, because they operate commercial websites accessible in this district and direct business activities towards consumers throughout the United States, including within the State of Florida. Defendants engage in the wrongful activities alleged herein through, at least, their fully-interactive commercial websites accessible and doing business in Florida and operating under the Subject Domain Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i)

Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, and/or selling goods and/or services using counterfeits and infringements of Plaintiffs' trademarks to consumers in this district.

## THE PLAINTIFF

8.      Fanatics is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the United States located at 8100 Nations Way, Jacksonville, Florida, 32256. Fanatics has developed its brand as a leader in selling and manufacturing licensed sports merchandise. For over fifteen years, Fanatics has operated the official e-commerce sites for certain sports leagues in the United States, including the NFL, MLB, NBA, and NHL, along with many professional and collegiate teams. It has invested deeply in technology and marketing to better serve sports fans and its business partners and has significantly increased e-commerce sales for all of its business relationships. Thanks to Fanatics' track record of success with its partners, its rights have consistently expanded, including the right to produce a broad range of apparel such as jerseys and championship products. Fanatics sells sports team and league licensed consumer products on its websites using its federally registered trademarks identified below.

9.      Fanatics offers for sale and sells its trademarked goods and/or services within the State of Florida, including this district, and throughout the United States. Defendants, through the advertisement, offer to sell, and/or sale of goods and/or services that use the Fanatics Marks, are

directly and unfairly competing with Fanatics' economic interests in the United States, including in the State of Florida, and causing Fanatics irreparable harm within this jurisdiction.

10.     Like many other famous trademark owners, Fanatics suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Fanatics' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce websites.

11.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, Fanatics expends significant resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies in anti-counterfeiting cases to expend significant resources across a wide spectrum of efforts to protect both consumers and themselves from the confusion and the erosion of the goodwill embodied in their brands.

### THE DEFENDANTS

12.     Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, business entities of unknown makeup, and/or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants direct their business activities toward consumers throughout the world, including the United States and within this district, through the simultaneous

operation of, at least, the interactive commercial Internet websites existing under the Subject Domain Names.

13. Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A" hereto.

14. Defendants are directly and personally contributing to, inducing, and engaging in the sale of goods using counterfeits of Fanatics' trademarks as alleged herein.

15. Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for goods being sold using counterfeit versions of Fanatics' trademarks, while shrinking the legitimate marketplace for authorized goods being sold using Fanatics' genuine trademarks. The natural and intended byproduct of Defendants' combined, concurrent actions is the erosion and destruction of the goodwill associated with Fanatics' famous name and associated trademarks, and the destruction of the legitimate market sector in which Fanatics operates.

16. Defendants are the past and present controlling forces behind the operation of the Internet websites operating under, at least, the Subject Domain Names.

17. Defendants directly engage in unfair competition with Fanatics by (i) advertising, offering for sale, and/or selling goods and/or services using counterfeits and infringements of one or more of Fanatics' trademarks to consumers within the United States and this district through at least the interactive commercial websites and operating under the Subject Domain Names, and any additional domains and websites not yet known to Fanatics, and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Fanatics' legitimate marketplace for its genuine goods and services. Defendants have purposefully directed some

portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, and/or sale of goods and/or services using counterfeits and infringements of Fanatics' trademarks to consumers in the State, and by operating an illegal marketplace enterprise which impacts and interferes with legitimate commerce throughout the United States, including within the State of Florida.

18.     Defendants have registered, established, or purchased, and maintained the Subject Domain Names and the websites operating thereunder. Defendants may have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information during the registration or maintenance process related to their respective Subject Domain Names. Many Defendants have registered and/or maintained some of their Subject Domain Names for the sole purpose of engaging in unlawful counterfeiting and/or infringing activities.

19.     Defendants will likely continue to register or acquire new domain names for the purpose of selling and/or offering for sale goods using counterfeit and confusingly similar imitations of Fanatics' trademarks unless preliminarily and permanently enjoined. Moreover, Defendants will likely continue to maintain and grow their illegal marketplace enterprise at Fanatics' expense unless preliminarily and permanently enjoined.

20.     Defendants' Subject Domain Names, and any other alias domain or e-commerce store names used in connection with the sale of goods and/or services using counterfeits and infringements of one or more of Fanatics' trademarks, are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Fanatics. Moreover, Defendants are using Fanatics' famous name and trademarks to drive online consumer traffic to their websites operating under the

Subject Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Fanatics' legitimate marketplace and intellectual property rights at Fanatics' expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Trademark Rights

21.      Fanatics is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Fanatics Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Good(s) |
|---|---|---|---|
| FANATICS | 3,447,091 | June 10, 2008 | IC 035 – Retail store services and on-line retail store services featuring sports related and sports team branded clothing, namely, shirts, sweatshirts, jerseys, jackets, shorts and hats; and retail store services and on-line retail stores services featuring sports related and sports team branded merchandise, namely, flags, football helmets, license plate holders, imitation license plates, watches, clocks and jewelry; product merchandising, namely, purchasing and maintaining inventory of products, namely, clothing, for others; order fulfillment services; business marketing consulting services, namely, providing business advice to others in developing online retail sites and direct marketing response businesses; customer services in the field of retail store services |

| | | | |
|---|---|---|---|
|  | 5,188,153 | April 18, 2017 | IC 025 – Clothing, namely, jackets, jerseys, sweatshirts, shirts, pants, headwear; hats<br>IC 040 – Custom manufacturing of clothing and apparel |
|  | 5,188,158 | April 18, 2017 | IC 025 – Clothing, namely, sweatshirts, jackets, jerseys, shirts, pants; headwear; hats<br>IC 040 – Custom manufacturing of clothing and apparel |
|  | 5,210,047 | May 23, 2017 | IC 035 – On-line retail store services and retail store services featuring clothing, sporting goods, bedding, videos, printed sports publications, sports memorabilia, sports related and sports team branded clothing and merchandise; business marketing consulting services; customer services, namely, responding to customers inquiries for others in the field of sports related and sports team branded clothing and merchandise; product merchandising; order fulfillment services; retail store services, namely, business management and operation of retail stores for others; conducting, arranging, and organizing sports memorabilia shows for commercial purposes |

| | | | |
|---|---|---|---|
|  | 5,261,667 | August 8, 2017 | IC 035 – On-line retail store services and retail store services featuring clothing, sporting goods, bedding, videos, printed sports publications, sports memorabilia, sports related and sports team branded clothing and merchandise; business marketing consulting services; customer services, namely, responding to customers inquiries for others in the field of sports related and sports team branded clothing and merchandise; product merchandising; order fulfillment services; retail store services, namely, business management and operation of retail stores for others; conducting, arranging, and organizing sports memorabilia shows for commercial purposes |
| FANATICS | 5,285,287 | September 12, 2017 | IC 025 – Clothing, namely, jackets, jerseys, sweatshirts, shirts, pants; headwear; hats |
| FANATICS | 5,597,643 | October 30, 2018 | IC 025 – Clothing, namely, sweaters, shorts; scarves |
|  | 5,607,480 | November 13, 2018 | IC 025 – Clothing, namely, sweaters, shorts; scarves |
|  | 5,623,137 | December 4, 2018 | IC 025 – Clothing, namely, sweaters, shorts; scarves |

| | | | |
|---|---|---|---|
| Fanatics | 5,745,801 | May 7, 2019 | IC 016 – Pictures; framed pictures<br>IC 020 – Photograph frames; collectible items, namely, baseballs, footballs, soccer balls, basketballs, hockey pucks, cleats, shoes, baseball bats, jerseys, hats, caps, helmets, flags, magazines, trading cards, pictures<br>IC 024 – Nylon flags<br>IC 028 – Baseballs; footballs; soccer balls; basketballs; hockey pucks; baseball bats |
| (logo) | 5,745,802 | May 7, 2019 | IC 016 – framed pictures<br>IC 020 – hats, caps<br>IC 028 – hockey pucks |
| FANATICS | 5,745,803 | May 7, 2019 | IC 016 – Pictures; framed pictures<br>IC 020 – Photograph frames; collectible items, namely, baseballs, footballs, soccer balls, basketballs, hockey pucks, cleats, shoes, baseball bats, jerseys, hats, caps, helmets, flags, magazines, trading cards, pictures<br>IC 024 – Nylon flags<br>IC 028 – Baseballs; footballs; soccer balls; basketballs; hockey pucks; baseball bats |

The Fanatics Marks are used in connection with the manufacture and distribution of high-quality goods and services in the categories identified above. True and correct copies of the Certificates of Registration for the Fanatics Marks are attached hereto as Composite Exhibit "1."

22.    The Fanatics Marks have been used in interstate commerce to identify and distinguish Fanatics' high-quality goods and services for an extended period.

23.    The Fanatics Marks have been used in commerce by Fanatics long prior in time to Defendants' use of copies of those marks. The Fanatics Marks have never been assigned or licensed to any of the Defendants in this matter.

24.     The Fanatics Marks are symbols of Fanatics' quality, reputation, and goodwill and have never been abandoned. Fanatics has carefully monitored and policed the use of the Fanatics Marks.

25.     The Fanatics Marks are well-known and famous and have been for many years. Fanatics expends substantial resources for developing, advertising, and otherwise promoting the Fanatics Marks.

26.     Further, Fanatics extensively uses, advertises, and promotes the Fanatics Marks in the United States in association with the sale of high-quality goods and services. Fanatics expends substantial resources promoting the Fanatics Marks and products and services using the Fanatics Marks.

27.     As a result of Fanatics' efforts, members of the consuming public readily identify merchandise sold using the Fanatics Marks, as being high-quality goods and services sponsored and approved by Fanatics.

28.     Accordingly, the Fanatics Marks have achieved secondary meaning among consumers as identifiers of high-quality goods and services.

29.     Genuine goods and services sold using the Fanatics Marks are widely legitimately advertised and promoted by Fanatics, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Fanatics' overall marketing and consumer education efforts. Thus, Fanatics expends significant monetary and other resources on Internet marketing and consumer education regarding its products and services, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Fanatics and its authorized retailers to educate consumers fairly and legitimately about the value associated with

the Fanatics brand and the goods and services sold thereunder, and the problems associated with the counterfeiting of Fanatics' trademarks. In addition, many of Defendants' websites are indexed on search engines and compete directly with Fanatics for space and consumer attention in search results.

### Defendants' Infringing Activities

30.     At all times relevant hereto, Defendants in this action have had full knowledge of Fanatics' ownership of the Fanatics Marks, including Fanatics' exclusive right to use and license such intellectual property and the goodwill associated therewith.

31.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods and/or services in interstate commerce using counterfeit and confusingly similar imitations of one or more of the Fanatics Marks through at least the interactive commercial websites operating under the Subject Domain Names. Specifically, Defendants are each using the Fanatics Marks to initially attract online consumers and drive them to Defendants' e-commerce store websites operating under the Subject Domain Names. Defendants are each using identical copies of one or more of the Fanatics Marks for different quality goods and/or services. Fanatics used the Fanatics Marks extensively and continuously before Defendants began using counterfeit and confusingly similar imitations of the Fanatics Marks.

32.     Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of their goods and/or services with the knowledge and intent that such goods and/or services will be mistaken for the genuine high-quality goods and/or services offered for sale by Fanatics. Defendants have clear knowledge that they are without authority to use the Fanatics Marks. Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of

Defendants' goods and/or services offered through Defendants' e-commerce store websites are genuine goods and/or services originating from, associated with, and/or approved by Fanatics.

33.     Defendants advertise their goods and/or services to the consuming public via at least the commercial websites operating under the Subject Domain Names. In so doing, Defendants improperly and unlawfully use one or more of the Fanatics Marks without Fanatics' permission.

34.     Defendants are concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of the Fanatics Marks. Specifically, Defendants are using counterfeits and infringements of Fanatics' famous name and the Fanatics Marks to make their websites selling unauthorized goods and/or services appear more relevant and attractive to consumers searching for both Fanatics goods and services online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Fanatics' genuine goods and services. Defendants are causing individual, concurrent, and indivisible harm to Fanatics and the consuming public by (i) depriving Fanatics and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Fanatics' genuine goods and services on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Fanatics Marks, (iii) increasing Fanatics' overall cost to market its goods and services and educate consumers about its brand via the Internet, and/or (iv) maintaining an illegal marketplace enterprise, which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Fanatics with impunity.

35.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and causing unified harm within this district and elsewhere

14

throughout the United States. Defendants are simply defrauding Fanatics and the consuming public for Defendants' own benefit.

36.      Defendants' use of the Fanatics Marks, including the promotion and advertisement, reproduction, distribution, sale, and/or offering for sale of their goods, is without Fanatics' consent or authorization.

37.      Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Fanatics' rights for the purpose of trading on Fanatics' goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Fanatics and the consuming public will continue to be harmed.

38.      Defendants' above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers into believing there is a connection or association between Fanatics' genuine goods and services and Defendants' websites operating under the Subject Domain Names, which there is not.

39.      Moreover, certain Defendants (the "Cybersquatting Defendants") have each registered, at least, one of their respective Subject Domain Name(s) using marks that are nearly identical and/or confusingly similar to at least one of the Fanatics Marks (the "Cybersquatted Subject Domain Names").

40.      The Cybersquatting Defendants do not have, nor have they ever had, the right or authority to use the Fanatics Marks for any purpose. Further, the Fanatics Marks have never been assigned or licensed to be used on any of their websites, including the websites operating under the Cybersquatted Subject Domain Names.

41.     The Cybersquatting Defendants have each provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

42.     The Cybersquatting Defendants have never used the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

43.     The Cybersquatting Defendants have not made any bona fide non-commercial or fair use of the Fanatics Marks on a website accessible under any of the Cybersquatted Subject Domain Names.

44.     The Cybersquatting Defendants have each intentionally incorporated at least one of the Fanatics Marks in their Cybersquatted Subject Domain Name(s) to divert consumers looking for Fanatics' genuine website to their own Internet websites for commercial gain.

45.     Given the visibility of Defendants' various websites and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Fanatics and the overall consumer market in which they operate because of Defendants' concurrent actions.

46.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Fanatics.

47.     Fanatics has no adequate remedy at law.

48.     Fanatics is suffering irreparable injury because of Defendants' unauthorized and wrongful use of the Fanatics Marks. If Defendants' counterfeiting and infringing, and unfairly competitive activities, and their illegal marketplace enterprise, are not preliminarily and

permanently enjoined by this Court, Fanatics and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

49.     The harm sustained by Fanatics has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their non-affiliated goods and/or services and by the creation, maintenance, and very existence of Defendants' illegal marketplace enterprise.

### COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

50.     Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 49 above.

51.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Fanatics Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of their goods and/or services.

52.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and/or distributing goods using counterfeits and/or infringements of one or more of the Fanatics Marks. Defendants are continuously infringing and inducing others to infringe the Fanatics Marks by using counterfeits and/or infringements of one or more of them in connection with the sale, offering for sale, distribution, and advertisement of their goods or services.

53.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among the consuming public as to the origin and quality of Defendants' websites operating under the Subject Domain Names and their goods and/or services sold in connection therewith.

54.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Fanatics and are unjustly enriching Defendants with profits at Fanatics' expense.

55.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Fanatics Marks in violation of Fanatics' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

56.     Fanatics has no adequate remedy at law and has suffered and will continue to suffer irreparable injury because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined, while Defendants are unjustly profiting from their unlawful activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

57.     Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 49 above.

58.     Defendants have advertised and offered for sale, throughout the United States via the Internet, their goods and/or services using copies of one or more of the Fanatics Marks.

59.     In advertising, offering for sale, and/or selling their goods and/or services, Defendants use copies of one or more of the Fanatics Marks that are virtually identical in appearance to the Fanatics Marks used by Fanatics in connection with the sale of Fanatics' genuine goods and/or services. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of Defendants' goods and/or services via their unauthorized websites operating under the Subject Domain Names.

60.     Defendants have used in connection with their advertisement, offer for sale, and/or sale of their goods and/or services, false designations of origin and false descriptions and

representations, including words or other symbols and designs, which tend to falsely describe or represent such goods and/or services as being affiliated with, connected to, or sponsored by Fanatics, and have caused such goods and/or services to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Fanatics' detriment.

61.     Defendants have each authorized infringing uses of one or more of the Fanatics Marks in Defendants' advertisement and promotion of their goods and/or services.

62.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the Fanatics Marks to unfairly compete with Fanatics and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Fanatics of valuable marketing and educational space online which would otherwise be available to Fanatics and (ii) reducing the visibility of Fanatics' genuine goods on the World Wide Web and across social media platforms.

63.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.     Fanatics has no adequate remedy at law and has sustained both individual and indivisible injury caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Fanatics will continue to suffer irreparable injury to its goodwill and business reputation, while Defendants are unjustly profiting from those actions.

### COUNT III – CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO § 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d))
(Against the Cybersquatting Defendants only)

65.     Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 49 above.

66.     At all times relevant hereto, Fanatics has been and still is the owner to all rights, title, and interest in and to the Fanatics Marks.

67.     The Cybersquatting Defendants have each acted with the bad faith intent to profit from the Fanatics Marks and the goodwill associated with the Fanatics Marks by registering and using the Cybersquatted Subject Domain Names.

68.     The Fanatics Marks were already distinctive and famous at the time the Cybersquatting Defendants registered the Cybersquatted Subject Domain Names.

69.     The Cybersquatting Defendants have no intellectual property rights in or to the Fanatics Marks.

70.     The Cybersquatted Subject Domain Names are each identical to, confusingly similar to, or dilutive of at least one of the Fanatics Marks.

71.     The Cybersquatting Defendants' registration and maintenance of the Cybersquatted Subject Domain Names are done with knowledge and constitutes a willful violation of Fanatics' rights in the Marks. At a minimum, the conduct of each of these Defendants constitutes reckless disregard for and willful blindness to Fanatics' rights.

72.     Each Cybersquatting Defendant's actions constitutes cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

73.     Fanatics has no adequate remedy at law.

74.     Fanatics has suffered and will continue to suffer irreparable injury while the Cybersquatting Defendants are unjustly profiting due to the above-described activities if those Defendants are not preliminarily and permanently enjoined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

75.    Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 49 above.

76.    This is an action against Defendants based on their (i) promotion, advertisement, distribution, offering for sale, and/or sale of goods and/or services using marks that are virtually identical to one or more of the Fanatics Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Fanatics sells its genuine goods and services, in violation of Florida's common law of unfair competition.

77.    Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and/or distributing goods and/or services using counterfeits and infringements of one or more of the Fanatics Marks. Defendants are also each using counterfeits and infringements of one or more of the Fanatics Marks to unfairly compete with Fanatics and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

78.    Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce store websites as a whole and all products sold thereon by their use of the Fanatics Marks.

79.    Fanatics has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions, while Defendants are unjustly profiting from those actions.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

80.     Fanatics hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 49 above.

81.     Fanatics is the owner of all common law rights in and to the Fanatics Marks.

82.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and/or sale of unauthorized goods and/or services using one or more of the Fanatics Marks.

83.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and/or selling goods and/or services using infringements of one or more of the Fanatics Marks.

84.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' goods and/or services using the Fanatics Marks.

85.     Fanatics has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions, while Defendants are unjustly profiting from those actions.

## PRAYER FOR RELIEF

86.     WHEREFORE, Fanatics demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their goods and/or services  using

the Fanatics Marks; from infringing, counterfeiting, or copying the Fanatics Marks; from using the Fanatics Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods or services; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Fanatics; from falsely representing themselves as being connected with Fanatics, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Fanatics; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Fanatics Marks in connection with the publicity, promotion, sale, or advertising of any goods or services sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods or services, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods or services as being those of Fanatics, or in any way endorsed by Fanatics and from offering such goods and/or services in commerce; from engaging in search engine optimization strategies using colorable imitations of Fanatics' name or trademarks; and from otherwise unfairly competing with Fanatics.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods and/or services using counterfeits and/or infringements of the Fanatics Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Fanatics' request, those acting in concert or participation with Defendants who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods or services using counterfeits and/or infringements of the Fanatics Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Fanatics to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods or services using counterfeits and/or infringements of the Fanatics Marks.

e.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Fanatics' request, the Defendants and the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domains used by Defendants, or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods or services using counterfeits and/or infringements of the Fanatics Marks, to the IP addresses where the associated websites are hosted.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Fanatics' election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting and/or infringement of the Fanatics Marks at issue to Fanatics' control so they may no longer be used for unlawful purposes.

g.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their Subject Domain Name(s) and any other domain names used by Defendants to Fanatics and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

h.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the Subject Domain Name(s) and any other domain names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Fanatics to request any Internet search engines or service provider referring or linking users to any URL of the Subject Domain Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the Subject Domain Names and/or permanently disable the references or links to all URLs of the Subject Domain Names

used by Defendants to promote, offer for sale, and/or sell goods using counterfeits and/or infringements of the Fanatics Marks, based upon Defendants' unlawful activities being conducted via the Subject Domain Names as a whole and via any specific URLs identified by Fanatics.

j.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Fanatics to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the Subject Domain Names to disclose to Fanatics the true identities and contact information for the registrants of the Subject Domain Names.

k.      Entry of an order requiring Defendants to account to and pay Fanatics for all profits earned from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the profit award to Fanatics be trebled, as provided for under 15 U.S.C. § 1117, or that Fanatics be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product or service type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

l.      Entry of an order requiring the Cybersquatting Defendants to account to and pay Fanatics for all profits resulting from those Defendants' cybersquatting activities and that the profit award to Fanatics be trebled, as provided for under 15 U.S.C. § 1117, or that Fanatics be awarded statutory damages from the Cybersquatting Defendants in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

m.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Fanatics' costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

n.     Entry of an award of pre-judgment interest on the judgment amount.

o.     Entry of an order requiring Defendants, at Fanatics' request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products or services, including without limitation, the placement of corrective advertising and providing written notice to the public.

p.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: October 23, 2025.             Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
Mallory R. Denzl (Fla. Bar No. 1050351)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: MalloryR@smgpa.cloud

Attorneys for Plaintiff, FANATICS, LLC

## SCHEDULE "A"

**[This page is subject to Plaintiff's Motion to File Under Seal. As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**